# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONALD JOHNSON (A-73676), ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 6077 |
| ) | |
| v. ) | Judge Blanche M. Manning |
| ) | |
| OFFICER AMANN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Donald Johnson, currently a detainee at Southwestern Correctional Center, filed suit, *pro se*, against Defendants Waukegan Police Officers Amann, Lamanna, Jurek, and Garcia alleging that they used excessive force in arresting him, denied him medical treatment, denied him due process of law when they took his personal property, and failed to protect him while in police custody based on Garcia's purported failure to intervene at the time of arrest. Presently before the Court is Defendants' motion for summary judgment. For the reasons stated in this order, Defendants' motion for summary judgment is granted in part and denied in part.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine

issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010) (*quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

**FACTS**

On April 23, 2009, at approximately 3:30 a.m., Plaintiff entered a closed Salvation Army facility on South Genesee Street in Waukegan, Illinois, that included a warehouse and a store. Plaintiff contends he walked through an open door to be the first to sign up for treatment when the facility opened in the morning while Officer Lamanna testified through written deposition that Plaintiff forcibly broke into the facility. Defendants assert that upon entering the facility, Plaintiff picked up a utility knife, a screwdriver, and a hammer. Plaintiff was subsequently observed on a security camera walking through either the store or the warehouse carrying a hammer.

When the Waukegan police arrived, they entered the facility. Plaintiff heard someone enter but did not know who it was. Defendants used a K-9 unit (a dog named Thunder) to effectuate the Plaintiff's arrest. Thunder was deployed a total of two times.

The events leading up to the deployment of Thunder are disputed by the parties. According

2

to the Defendants, the first deployment came after they twice told Plaintiff to surrender but he refused to comply and fled into the warehouse. Thunder was released and directed to "find him." Thunder was later deployed a second time after he obtained a visual on Plaintiff.[1] As before, the officers made announcements for Plaintiff to surrender and again, Plaintiff failed to comply. Concerned for officer safety because Plaintiff had been seen earlier in the warehouse on camera carrying a hammer, Officer Lamanna deployed Thunder a second time, directing Thunder to "get him." Once the officers tried to take Plaintiff into custody, he resisted, pulling his arms from the officers and struggling with them. Plaintiff refused multiple commands to put his arms behind his back and struggled with the officers when they attempted to place handcuffs on his wrists.

According to the Plaintiff, he never heard any announcements by the police for him to surrender. He contends that as he was walking in the facility he came to an intersection where he observed the police officers and Thunder. Because he had nowhere to go, he stopped walking. As soon as the police officers observed Plaintiff, they ordered Thunder to "sic him." At that time, Plaintiff states that he had nothing in his hands, which were up in the air with the palms facing out.

Thunder grabbed Plaintiff's right forearm and pulled him to the ground. Officers Amann and Jurek grabbed Plaintiff's left wrist and arm and pushed him to the ground. Officer Amann had his knee pushing on Plaintiff's back and Officer Jurek pushed Plaintiff's head into the ground. Officer Garcia did not physically touch Plaintiff but was present during the events.

Once Plaintiff was handcuffed, the officers took Plaintiff's hat, gloves, and a box cutter out of his pocket. The officers took Plaintiff out of the warehouse and Officer Jurek patted Plaintiff down before placing him in the squad car. Officer Jurek took Plaintiff's wallet and cell phone from

---

[1] It is not clear from the record but it appears that Thunder was restrained after the first deployment and then deployed the second time.

his pocket and left Plaintiff's watch on his wrist. Plaintiff's wallet and cell phone were taken as evidence, and other personal property was taken from Plaintiff incident to his arrest.

The officers took Plaintiff to the Waukegan jail. Officer Lamanna observed that Plaintiff had a bite mark from Thunder on his arm with puncture wounds that had broken Plaintiff's skin. Plaintiff also complained that his arm hurt and was swollen because the police had put on the handcuffs too tight. At the police station, police left one handcuff on Plaintiff's right arm, which was chained to a bench. Plaintiff's left arm was free.

After Plaintiff complained that his arm was hurting and requested to be taken to the hospital, the police called the Waukegan Fire Department so paramedics could treat the dog bite. Although Plaintiff requested that the paramedics take him to the hospital for the dog bite, the paramedics declined to do so because they concluded that the bite was not serious. The paramedics noted on their report that Plaintiff "did not want to go to the hospital." Plaintiff has three scars on his arm from the dog bites.

**ANALYSIS**

A.  Excessive Force Claim

Plaintiff alleges that the officers used excessive force in effectuating his arrest. Excessive force claims are analyzed under the Fourth Amendment's "reasonableness" standard. The "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The determination of whether the use of force at the time of arrest was excessive depends on the objective reasonableness of the police officer's actions based on the conditions the officer faced at that time. *See Graham*, 490 U.S. at 396; *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009). In assessing whether the actions were objectively reasonable, the court examines the totality of the circumstances, including

4

"[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "[S]ummary judgment is often inappropriate in excessive force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (*citing Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009)).

Here, the Defendants argue that the use of Thunder and the means of subduing Plaintiff were reasonable because: (1) Plaintiff did not listen to their commands to surrender; (2) Plaintiff struggled after Thunder had taken hold of him; and (3) Plaintiff had earlier been observed on the security camera with a weapon. However, Plaintiff disputes that the officers ever commanded him to surrender. In addition, he asserts that when the officers had him in their sight, there was no place for him to go and the officers could see that he had nothing in his hands. Furthermore, Plaintiff avers that Thunder was ordered to "sic him" immediately upon coming within the officers' sight. According to Plaintiff, he did not resist the officers once Thunder had his arm, but merely was trying to remove his arm from the dog's jaws.

In light of these disputed facts, genuine issues of material fact exist as to whether the police officers used excessive force in effectuating Plaintiff's arrest; accordingly, the motion for summary judgment as to the excessive force claim is denied.

B.      Deliberate Indifference to Serious Medical Needs Claim

Plaintiff next alleges that Defendants were deliberately indifferent to his serious medical needs when they neglected to take him to the hospital for treatment of the dog bites. The Fourth Amendment's objective reasonableness standard applies to Plaintiff's claim regarding his medical needs as he was under arrest but had not yet been subject to a judicial determination of probable

5

cause. *See Sallenger v. City of Springfield*, 630 F.3d 499, 503 (7th Cir. 2010). Four factors are examined in determining whether an officer responds reasonably to a detainee's need for medical care: (1) the notice the officer has of the detainee's need for medical attention, (2) the seriousness of the need, (3) the scope or nature of the required treatment, and (4) any countervailing police interests, *e.g.*, the need to prevent the destruction of evidence or other similar law-enforcement interests. *Sallenger*, 630 F.3d at 503; *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

In the instant case, Plaintiff had minor visible wounds and he informed the police officers that he needed medical treatment. Based on Plaintiff's complaints, Defendants called the paramedics without delay. The paramedics came to the jail and assessed Plaintiff. The paramedics informed Defendants that Plaintiff did not require any medical attention. Relying on the paramedics' assessment, Defendants did not take Plaintiff to the hospital. Under these undisputed facts, no reasonable jury could find that Defendants acted unreasonably by not taking Plaintiff to the hospital. *See Sallenger*, 630 F.3d at 504 ("The Fourth Amendment requires reasonableness, not immediacy."); *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) (officials who are not medical professionals are entitled to rely on the opinions of medical professionals). Therefore, the motion for summary judgment on the deliberate indifference to serious medical need claim is granted.

C.     Denial of Due Process Claim

Plaintiff also alleges that his personal property was taken at the time of his arrest without due process. Plaintiff alleges that Officer Jurek took his property, which he never saw again. Plaintiff does not specify if he is alleging that Officer Jurek unintentionally or intentionally deprived him of his property without due process of law. However, under either theory, his due process claim fails.

Under *Daniels v. Williams*, 474 U.S. 327, 328 (1986), an unintended loss of property resulting from a state actor's negligence does not implicate the Due Process Clause. Thus, Plaintiff's

6

due process rights were not violated if Officer Jurek negligently (*i.e.*, not intentionally) deprived him of his property.

If Plaintiff is alleging that Officer Jurek intentionally took his property without due process, Plaintiff's claim fails because the State provides a meaningful post-deprivation remedy. A random and unauthorized deprivation of property by a state employee does not constitute a due process violation if the State provides a meaningful post-deprivation remedy. *See Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007). Although the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Act) limits the liability of public employees, 745 ILCS 10/2-202, the Act specifically denies immunity to public employees who engage in willful and wanton conduct. Intentional misconduct falls within this exception. *See Munizza v. City of Chicago*, 222 Ill. App. 3d 50, 56 (1991); *Breck v. Cortez*, 141 Ill. App. 3d 351, 360 (1986). Thus, if Officer Jurek intentionally deprived Plaintiff of his property, Plaintiff could bring a conversion claim against Officer Jurek in state court. *See Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998) (providing elements of a conversion claim); *see also Gates v. Towery*, 435 F. Supp. 2d 794, 801 (N.D. Ill. 2006) (Castillo, J.) (allowing arrestees' conversion claim to proceed based on allegations that police officers improperly seized their property); *Slaughter v. Anderson*, 673 F. Supp. 929, 930 (N.D. Ill. 1987) (Shadur, J.) (finding plaintiff had failed to state a due process claim based on allegation that police officers left his door open to allow third-parties to remove his property because the state provided an adequate post-deprivation state remedy).

Because the State has provided an adequate post-deprivation remedy, the loss of Plaintiff's property based on Officer Jurek's alleged intentional conduct is not actionable under 42 U.S.C. § 1983. *See Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002).

D.      Failure to Protect (Intervene) Claim

Plaintiff alleges that Officer Garcia was present at the time that excessive force was used during his arrest and that he failed to intervene. To prevail on his failure to intervene claim against Officer Garcia, Plaintiff must demonstrate that Officer Garcia had reason to know excessive force was being used against Plaintiff and he must have had a realistic opportunity to prevent the harm from occurring. *See Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008). A failure to intervene claim may exist if an officer is present during the use of excessive force and fails to "at least" caution the officer using excessive force to stop. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Seventh Circuit "has made clear that the prongs of [a failure to intervene] analysis almost always implicate questions of fact for the jury: 'Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all of the evidence, a reasonable jury *could not possibly conclude otherwise*.'" *Abdullah v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (*quoting Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997) (emphasis in *Abdullah*)).

The parties do not dispute that the events from the time the police officers located the Plaintiff to his seizure with the use of Thunder was very short in duration. Plaintiff has not presented any facts indicating that Officer Garcia had reason to know that Thunder would be ordered to "sic him" and that the police officers would have a difficult time getting Thunder to release Plaintiff's arm, resulting in further struggles with the police officers. However, it is not clear whether Officer Garcia had a reasonable opportunity to, at the minimum, caution the other police officers to stop using the alleged excessive force in securing Plaintiff's arrest after Thunder was released. While it is a close call, it cannot be determined at this time that "a reasonable jury could not possibly conclude" that Officer Garcia failed to intervene if Plaintiff's version of the events is believed by the jury. Accordingly, summary judgment is also denied as to Plaintiff's failure to intervene claim.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion for summary judgment [44] is granted in part and denied in part. Summary judgment is granted in Defendants' favor as to Plaintiff's denial of medical care claim and denial of due process claim. Summary judgment as to the excessive force and failure to intervene claims is denied. Status is set for April 19, 2011, at 11 a.m. to set a trial date.

**Dated**: April 11, 2011

                                                          **Blanche M. Manning**
                                                         **United States District Court**